## BULKLEY a. MARKS.

*New York Common Pleas ; General Term, January,* 1863.

Limited Partnership:—Misstatement in Certificate.—Withdrawal of Capital.—Dissolution.—Trial.—Special Verdict.

A statement in the certificate of the formation of a limited partnership, that the special partner has contributed a certain sum, when, in fact, a portion of that sum has been contributed by another person with the design of securing the rights and benefits of a special partner without becoming one, renders all the parties liable as general partners.

A special partnership cannot be dissolved by the act of the parties until four weeks after the publication of notice of the intended dissolution.

The withdrawal, by a special partner, of his capital, before the actual dissolution of the firm, though after notice of dissolution published, renders him liable as a general partner.

In an action for money, where the amount and interest is admitted and a special verdict establishes defendant's liability, an assessment, by the jury, of the amount of the recovery, is unnecessary.

Appeal from a judgment.

This action was brought by Charles A. Bulkley, Richard Harluck, and Edward H. Bulkley, against Abiel B. Marks, Edmund C. Bramhall, George P. Lord, and Samuel N. Brown, to recover $2,334.18, the amount of two promissory notes. The facts are fully stated in the opinion. The action was tried before Hon. Judge Hilton. The testimony of Brown and Lord taken upon commission was read. Lord, in answering the

eighteenth interrogatory, said: "Bramhall was in the habit of visiting the store of Lord & Brown; was there frequently during the existence of said firm; he looked at the stock of goods and into the books of said firm as frequently and as long as he saw fit. His visits were to look into the business of the firm." The last sentence was admitted over defendants' exception. Lord's answers to the fifth and sixth interrogatories disclosed, that of $20,000 contributed by Marks to the capital of the firm $8,000 was paid by Bramhall; to the admission of these answers defendants excepted. The 48th, 53d, 57th, 59th, and 60th cross interrogatories aimed to elicit from Lord that at the time of the assignment by Lord & Brown, Lord reserved for his own use various notes and securities; the answers to these interrogatories were excluded, and defendants excepted. The court submitted but one question to the jury, viz: "was Edmund C. Bramhall interested in the limited partnership of Lord & Brown at the time of its formation on January 1st, 1851?" To this question the jury found in the affirmative. The defendants, Marks & Bramhall, having admitted at the close of the case that the plaintiff's claim, with interest, amounted to $3,266.21, the court, upon the rendition of the verdict, directed judgment for the plaintiffs for that amount, and a motion for a new trial having been denied defendants, Marks and Bramhall appealed.

*Benedict & Boardman,* for the appellants.—I. As respects any moneys recovered on account of interest or profits, there was no evidence in the case either that the defendant Marks had received more than he might lawfully take; or, if he had, that it was received in bad faith. Even if he had received on these accounts more than he was entitled to take; yet in the absence of ill faith he was not chargeable for such excess, as a general partner, or in any other manner than by a suit for the benefit of all the creditors. (Innes *a.* Lansing, 7 *Paige,* 583; Whitewright *a.* Stimpson, 2 *Barb.,* 379; La Chaise *a.* Lord, 10 *How. Pr.,* 461; Lachaise *a.* Marks, 4 *E. D. Smith,* 610.)

II. Nothing was done in connection with the dissolution, which could be tortured into a withdrawing of the principal of Mark's special capital. 1. The notes created no lien. 2. The agreement of dissolution contains nothing which can be con-

strued as a release of the claim of the limited partnership to reimbursement of any moneys paid to Marks for interest or profits, which might thereafter appear to have been an overpayment by mistake. (Coddington *a.* Davis, 1 *N. Y.*, 186 ; Jackson *a.* Stackhouse, 1 *Cow.*, 122 ; Hore *a.* Becher, 12 *Sim.*, 469 ; *Story's Eq. Jur.*, § 145.)

III. An alteration in the names of the partners and in the capital or shares of the business, in contravention of the twelfth section of the act authorizing limited partnerships, operates simply as a dissolution. It is only by carrying on the business after such alteration that the firm is changed into a general partnership, and the special partner rendered equally liable for the debts.

IV. An agreement of dissolution without the withdrawal of capital is only a legal dissolution, and not an "alteration."

V. If Bramhall ever was a partner of Lord & Brown, he was only a dormant partner in a general partnership, and if such, he withdrew from the firm before September 12th, 1854, and is not liable for that part of the plaintiff's demand which arose from goods sold on that day. (Davis *a.* Allen, 3 *N. Y.*, 168.)

VI. Such an agreement between Marks and Bramhall as is stated in the writing, dated January 3d, 1852, coupled with a payment of $8,000 by Bramhall to Marks at the formation of the firm of Lord & Brown, as the consideration of such agreement, and in order to enable Marks to pay the $20,000, and with such actual use of the $8,000, would not render Bramhall a partner of the firm, or make him responsible to the plaintiffs in this action. (Cox *a.* Hickman, 9 *C. B., N. S,* 47.)

VII. It was error in the court to submit to the jury the question, whether Bramhall was interested in the limited partnership of Lord & Brown, without proper instructions or qualifications in respect to the kind of interest it was necessary for him to have in order to render the insertion of his name necessary.

VIII. The objections to portions of the answers to the 5th, 6th, and 18th interrogatories were well taken. In each of these instances, and especially the last, the witness was allowed to testify to his constructions or conclusions, instead of being confined to a statement of what he saw or heard.

IX. The testimony as to the conduct of the witness, Lord, had a direct bearing on the question of the condition of the

firm of Lord & Brown in August, 1854, and had important bearing on the character of the witness.

X. The court erred in taking from the jury the right to assess the amount in which the defendants were liable to the plaintiffs.

*C. Bainbridge Smith*, for the respondents.—I. Limited partnerships are allowed to be formed upon certain specified terms and conditions. (1 *Rev. Stat.*, 764, §§ 1, 4.) 1. These provisions of the statute have been violated, as the name of the defendant Bramhall, who was interested in the firm from its commencement to its termination, does not appear at all in the certificate. 2. Section 8 declares that if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof, as general partners. (1 *Rev. Stat.*, 765, §§ 7, 8.)

II. The agreement between the defendants Marks and Bramhall, set forth in their answers, renders them liable under the 12th section of the act. (1 *Rev. Stat.*, 765, § 12; Beers *a.* Reynolds, 12 *Barb.*, 288; 11 *N. Y.*, 100; Andrews *a.* Schott, 10 *Barr. Pa.*, 47.)

III. Conceding the special partnership had been formed, and no alteration taken place, Marks would have been liable under section 15. (1 *Rev. Stat.*, 766; Madison County Bank *a.* Gould, 5 *Hill*, 309; Argall *a.* Smith, 3 *Den.*, 435; Beers *a.* Reynolds, 12 *Barb.*, 288; 11 *N. Y.*, 100.) 1. The partnership, by the statute, could not be dissolved, by the acts of the parties, until the expiration of four weeks from publication of the dissolution in the State paper, to wit, August 19th, 1854. (1 *Rev. Stat.*, 767, § 24.) 2. The defendant Marks, the alleged special partner, had no capital in the firm of Lord & Brown in and after the 14th August, 1854. All of it up to that time had been withdrawn by the transfer to him of certain interest, profits, and notes. (1 *Rev. Stat.*, 766, § 15; Madison County Bank *a.* Gould, 5 *Hill*, 309; Andrews *a.* Schott, 10 *Barr. Pa.*, 47.)

IV. With regard to the theory that Bramhall was a dormant partner merely. 1. The limited partnership could not be dissolved "by the acts of the parties," until the expiration of the four weeks from the publication of the dissolution in the State paper. (2 *Rev. Stat.*, 767, § 24.) The merchandise for which the notes were given was sold prior to that date. 2. The de-

fendants cannot take advantage of their own wrong by setting up the firm was a general partnership from the beginning, and that the defendant Bramhall was a dormant partner. 3. The statute renders the defendants liable as general partners, by reason of the alteration of the shares of the capital, and the names of the parties interested therein. (Beers *a*. Reynolds, 12 *Barb.*, 288; 11 *N. Y.*, 100.) 4. The plaintiffs had an election to consider the arrangement between the defendants as merely void, or treat the transaction as a violation of the statute, and charge the defendants Marks and Bramhall as general partners; and this irrespective of a design to defraud or injure the creditors of the firm. (Beers *a*. Reynolds, 11 *N. Y.*, 100.)

By THE COURT.*—DALY, F. J.—On the 31st of December, 1850, the defendants Lord, Brown, and Marks, entered into an agreement for the formation of a limited copartnership, to commence on the first of January following, and to continue for four years thereafter, of which Lord and Brown were to be the general partners, and Marks a limited partner; Lord to contribute $5,000, Brown $1,000, and Marks $20,000 in cash; and on that day the certificate and affidavit required by the statute was filed, to the effect that Marks had contributed the sum of $20,000 as a special partner, and that the same had been actually and in good faith paid in to the common stock in cash. The usual notice was published, and at the time designated the parties commenced business. Brown did not contribute the $1,000, having been disappointed in obtaining it, and Lord contributed but $3,000 instead of $5,000.

$8,000 of the $20,000 paid in by Marks was received from the defendant, Bramhall. Bramhall was an old acquaintance of Lord and of Marks, and shortly before the formation of the partnership he introduced Marks to Lord. Lord, who was examined as a witness, testified that Bramhall told him previous to its formation, after he had introduced Marks to him, and while negotiations were pending for the formation of the partnership, that he had agreed to take an interest with Marks in the business, and had agreed to do so for the purpose of assisting Lord, and that Lord must keep it strictly private; that he

---

* Present, DALY, F. J., BRADY and HILTON, JJ.

was to contribute $8,000 of the $20,000 that Marks was to furnish, and was to receive two-fifths, and Marks three-fifths of the profits resulting from advancing the $20,000 capital contributed by Marks; that he had a written agreement between himself and Marks in regard to his interest, drawn up by Mr. Boardman, the defendant's attorney, and that the agreement was so drawn that in case Marks should, by any action of his, make himself liable as a general partner, he, Bramhall, would be entirely exempt from liability; and that he had Marks tight; that he requested that his interest in the business should be kept strictly private, and said that the object in so arranging matters was to enable him to advise and assist the firm more than could be done in a limited copartnership under the laws of New York,—that the law relating to special partnership was so stringent, that the special partner could hardly go into the store without making himself liable as a general partner,—and that by this arrangement he could advise with and assist the firm.

There was a clause in the articles of copartnership in these words: "As a matter of courtesy to Mr. E. C. Bramhall, of Jersey City, for the interest he has manifested in the welfare of this copartnership, and his assistance in the advancement of its interests, we invite him, at all times, or at such times as may suit his convenience,' to examine into our business affairs." Lord testified that when he saw the clause in the article of copartnership, he objected to it as unnecessary, and Marks answered that he, Lord, knew that Bramhall had an interest, and that he had desired that article to be inserted. Lord testified further that after the copartnership was formed, Bramhall told him that he had contributed $8,000 of the $20,000 capital furnished by Marks, and that he was to receive from Marks two-fifths of all that Marks received from the firm; and he requested that in giving the notes of the firm as dividends of profits, that they should be so drawn as that he might receive his share of them without waiting until they had become due; that he was to receive two-fifths of all that Marks received, whether he received it as interest or capital, or as dividends of profits, or as dividends of the capital at the time when the copartnership should terminate. Lord also testified that Marks knew of Bramhall having an interest or share in the profits of the firm; that he knew of it from Bramhall before the copartnership

articles were signed, and that he introduced the article before referred to, so as to allow Bramhall to have a supervision over his interest; that Marks frequently told him that Bramhall owned a share of his interest in the business.

It appeared that an agreement in writing was executed between Bramhall and Marks, bearing date the third day of January, 1852, two days after the copartnership was to commence, by which it was agreed, in consideration of $8,000 received by Marks from Bramhall, that Marks would account for and pay over to Bramhall two-fifths of all sums of money, securities, or evidence of debt or other property, during the continuance of the copartnership, which Marks might receive therefrom as interest, profits, or increase, and two-fifths of all that he might receive on the winding up thereof; Marks agreeing to account to Bramhall for two-fifths thereof, the same as if he, Bramhall, was a special partner in the house by the investment of the said sum of $8,000; but that Marks was not to be liable to Bramhall beyond two-fifths of all he received from the firm, in any event.

Admitting this state of facts to be true, it is apparent that the whole arrangement was a clumsy contrivance to evade the statute, a device by which Bramhall meant to secure all the benefits of a limited copartnership to the extent of $8,000, with a more active interference in the business of the firm than the law will allow, without becoming responsible as a general partner. This is apparent from the written agreement between him and Marks, and from the insertion of the clause before referred to in the article, which Marks himself testified was inserted, "simply because Bramhall was a good business man and could advise with Lord." This agreement operated as a transfer of two-fifths of Marks' interest, not only of the profits but of the capital invested by him. By the language of the agreement, he was to have every thing that he could have had as a special partner investing £8,000, and, upon a dissolution, he would have been entitled to claim that interest. Having been transferred to him by Marks, the other partners would have been bound to pay it over to him. He could not become a special partner without complying with the provisions of the statute. As a special partner, he would have had the right, from time to time, to examine into the state and progress of the partner-

ship concerns, and to advise as to their management. (1 *Rev. Stat.*, 766, § 17.) He sought to secure the right and all the benefit of a special partner without becoming one, and thereby made himself a general partner. He is made so by the operation of the statute, which declares that all persons interested in the partnership shall be liable as general partners if any false statement is made in the certificate or affidavit by which the limited copartnership is formed. (1 *Rev. Stat.*, 765, §§ 7, 8.) The statement in the certificate and affidavit was that Marks had contributed $20,000 of the capital. By Lord's testimony, $8,000 was contributed by Bramhall, with an understanding and under an arrangement by which he was to have all the benefit of a special partner without becoming one. Such is the legal effect of the written agreement between him and Marks. Such was the understanding of Lord both before and after the copartnership was formed, and though Brown, the other general partner, testifies that he knew nothing of it, the arrangement was carried out by the firm for three years, the notes for profits and interest on capital being drawn, as Bramhall had suggested, for two-fifths and three-fifths. This was proved by the defendants' witnesses. The clerk of the firm, Clusman, and the defendant Marks, testified that all the notes received by Marks were divided up in this way, and this is a fact with which Brown, as a general partner, is chargeable with the knowledge of. Lord conducted the financial business, but in his absence it was attended to by Brown. It was a matter which Brown could have known. It would appear upon the payment of the notes, and if he did not know it, it must be deemed to have been done with his assent. The fact that the $8,000 was in reality invested in the firm for the benefit of Bramhall, rendered the statement in the affidavit that it was contributed by Marks, untrue, and the effect of this false statement was to ·make Bramhall and Marks general partners.

Both Bramhall and Marks denied that they had made the statements sworn to by Lord. They, however, contradict each other, and are in turn contradicted by the agreement. Marks swore that he borrowed the $8,000 from Bramhall. The agreement shows that it was not borrowed; that it was not a loan in any sense, which is an agreement to repay a sum received, with interest, if it is retained beyond the time when it is payable

back. So far from being a loan, it was to be used in merchandising, and Bramhall was to receive all the profit that might grow out of its use in that way as part of the capital of a mercantile firm. Bramhall swore that he told Marks that he would loan him the $8,000 with the understanding that he could, if he so desired, have the privilege of taking two-fifths of what Marks should receive from the business of the firm in lieu of the $8,000; that he finally concluded to avail himself of that privilege, and that the arrangement was made when he entered into the written agreement; that was, according to its date, on the 3d of January, 1862. Marks swore that, about the time of the formation of the partnership, Bramhall told him that he could loan him $8,000 for a time, but could not spare it from his business permanently; that it was finally left at his option that he might take two-fifths of what Marks should receive, or have the $8,000 repaid to him; and that finally, in the summer following, they made a definite agreement that Bramhall was to have two-fifths of all profits, and in the last statement he is contradicted, both by Bramhall and by the agreement; in addition to which, the testimony of Marks throughout, and that of Bramhall, to a certain extent, was evasive and shuffling.

So far, therefore, as the testimony of these witnesses was in conflict with the statement of Lord, it was for the jury to decide which they would believe; and as the judge left it to the jury to find, as a question of fact, whether Bramhall was interested in the partnership at the time of its formation, and the jury having found that he was, they must be regarded as having pronounced in favor of the truthfulness of Lord.

The special partnership could not be dissolved by the act of the parties until four weeks after the publication of notice of the intended dissolution (Beers a. Reynolds, 12 *Barb.*, 288; 11 *N. Y.*, 100), which, in this case, would be on the 17th of September, 1854. Before that time Marks withdrew all his capital by the transfer to him of certain interests, profits, and notes, which the statute forbids. (1 *Rev. Stat.*, 766, § 15.) He had nothing in the firm after the 14th of August, 1854. He could not by that act terminate his limited copartnership, but continued liable until the actual dissolution—that is, until the 17th of September, 1854—for all engagements which the firm might make in the prosecution of their business up to that time. One·

of the notes in suit was given for merchandise sold to the firm on the 18th of August, 1854, and for the payment of that note he is liable. He is liable upon that as well as upon the note given on the 19th of March, 1854, as a general partner, by reason of the false statement in the certificate and affidavit as to the amount contributed by him to the capital stock.

The answer as to the purpose of Bramhall's visit to the store was properly allowed. The witness spoke as to a general fact which he might well know. The same remark applies to the answers to the 5th and 6th interrogatories; the witness answered as to facts within his knowledge. The answers to the 48th, 53d, 57th, 59th, and 60th cross-interrogatories in the last depositions read were all properly excluded. The testimony was totally irrelevant, and had no bearing upon the questions under consideration. There was no positive evidence that the plaintiff had received actual notice of the intended dissolution. The boy who served the circulars could remember but a few of the firms with whom they were left. The plaintiff, Bulkley, admitted that he had seen a circular, but could not recollect whether he had received a copy of it in August, 1854, or not, and that he did not recollect whether, when he sold the goods, he knew of the dissolution or not.

Marks and Bramhall, to be released from liability, as general partners, for the debt incurred by the sale of the goods on the 18th of August, 1854, were bound to show that the plaintiffs had notice of the dissolution before that sale; and there was no positive evidence that they had.

The published notice, moreover, was of the dissolution of a limited partnership, which did not operate under the statute as an actual dissolution until a month after this sale was made; and persons dealing with the firm had a right to rely upon the continuance of the partnership, until the dissolution, as the notice expressed it, took "effect according to law." (Beers *a.* Reynolds, 12 *Barb.*, 288; 11 *N. Y.*, 100.) The amount of the notes, and the interest, having been admitted by the counsel for Marks and Bramhall, there was no occasion for an assessment of the amount due.

The judgment should be affirmed.

In the case of RICHTER, against the same defendants, decided at the same term, the following opinion was delivered.

By THE COURT.—DALY, F. J.—The only particular in which this case is alleged to differ from Bulkley a. Marks et al., decided at this term, is in respect to the notice of dissolution, and upon that point it is sufficient to say, as was said in that case, that the design of the defendants was to dissolve a limited copartnership; that the public had notice that the dissolution would take effect according to law; and that according to law it did not take effect until nearly a month after this sale was made. Whether Marks and Bramhall had made themselves general partners or not, the firm, according to the notice, was to be dissolved at the expiration of four weeks from the first publication of the notice; and up to that period, the partnership, whether it was general or limited, was, by the terms and legal effect of the published notice, to continue.

The judgment should be affirmed.